W. E. W. TRUCK LINES, INC., A CORPORATION, APPELLANT, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

132 N. W. 2d 782

Filed January 22, 1965. No. 35786.

Bosley & Bosley, for appellant.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., W. L. Strong, and James J. Duggan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

BROWER, J.

This is an eminent domain action brought by the State of Nebraska, Department of Roads, condemner, for the condemnation of certain real estate for the purpose of reconstructing a highway. On appeal from the board of appraisers to the district court for Hitchcock County, the condemnee W. E. W. Truck Lines, Inc., was designated as plaintiff and the condemner as defendant. They will be referred to here as they were in district court.

The property of the plaintiff taken by condemnation is described by metes and bounds in the pleading. It will not be necessary to so describe it here. The plaintiff owned a tract of land situated at the north edge of Culbertson, Nebraska. It lies south of U. S. Highway Nos. 6 and 34, hereafter called Highway No. 6, which runs east and west and abuts it. The north line of the premises is about 677 feet long. It is bounded by State Highway No. 17 on the west, and by a street of Culbertson on the east. The testimony indicates the depth of

the property as it extends to the south is not uniform. The exact course of the southern boundary is not made clear and the plat to which the witnesses refer does not show the southern portion of the tract. It appears the whole premises before the taking included about 111,-000 square feet. Of this, 11,787.05 square feet were condemned, consisting of an irregular tract along the south line of the old highway on the north. The tract is approximately 590 feet long east and west and irregular in shape. It is 54.2 feet wide on the extreme east of the premises and narrows as it extends westerly, at first by steps and thereafter gradually to a point.

Plaintiff owned and carried on a commercial truckline operation with facilities for servicing the trucks on the premises. It also owned and operated thereon a retail and wholesale lumber and building supply, or hardware business.

Located towards the north of plaintiff's land were three buildings, a hardware and supply store, a machine and repair shop, and a lumber storage shed. Further south was another large building used for lumber storage also. The plaintiff operated 10 or 11 large diesel trucks, some of which with their trailers were 60 feet in length, and other smaller trucks.

Before its reconstruction Highway No. 6 was a two-lane surfaced road. The driveway then used to reach plaintiff's premises from this highway was 140 feet in width and consisted of gravel and crushed rock. This driveway was in the approximate center of the north side of the premises and extended from the end of a fence maintained just south of the highway on the west portion of the north boundary to a point north of the east side of the hardware store. Previous to the reconstruction, trucks proceeding west could turn directly to the left into the plaintiff's premises and those going east could do the same by turning to the right.

On reconstruction Highway No. 6 was made a four-lane paved road. A median was placed in the center of

the highway extending the full length of the premises. The two lanes on its north were restricted to westbound traffic and the two on the south to eastbound traffic. The new paving in each direction was 25 feet wide past the center of the premises on the north although it widened near the intersection of State Highway No. 17 on the west. The northern portion of the median curved to the left further widening the pavement before reaching State Highway No. 17 to assist drivers of westbound vehicles in executing a left-hand turn. A similar reciprocal curve existed for eastbound traffic before reaching the street on the east.

A concrete curb about 8 inches in height was placed on the south side of the paved portion of Highway No. 6 as it went past the premises. A new cement driveway giving access to the premises was constructed in the approximate center of the old 140-foot entrance to the premises and the curb curved in on each of its sides. The entrance between curbs was 58 feet wide as it left the roadway and narrowed to 31 feet on entering the premises. The result was that only vehicles coming from the west could enter the premises directly.

During the trial the jury under instructions from the court viewed the premises involved in the litigation. The trial resulted in a general verdict assessing the plaintiff's recovery at $5,000. The jury further made special findings in answer to questions propounded by the court which stated this general verdict included $2,000 on account of the actual appropriation of the land taken and $3,000 for consequential damage to the remainder.

The plaintiff appeals from an order overruling its motion for new trial made after judgment.

The alleged errors of the trial court complained of by the plaintiff are its refusal to admit in evidence testimony proffered by the plaintiff and the giving of instructions Nos. 13, 14, and 15 defining the issues to the jury. It also contends the verdict was inadequate.

The statements of plaintiff's witness claimed to have been wrongfully excluded concerned the inability of the drivers of westbound trucks and other vehicles to turn them left and drive directly into plaintiff's premises from lanes to the north of the median, or to turn west on leaving the premises because of the required directional traffic. Plaintiff contends the resulting inconvenience to the right of ingress and egress constituted a substantial special damage to the remainder of the property which was compensable. The trial court held that the State had a legal right to control traffic on the highways for the purpose of promoting safety in their use under the police power and refused to admit such evidence. In the recent case of Painter v. State, 177 Neb. 905, 131 N. W. 2d 587, which involved the right of condemnation where the State had installed such a median, this court held: "An abutting landowner has no vested interest in the flow of traffic past his premises. Ordinarily the mere diversion of traffic alone, regardless of the fact that a part of condemnee's land is taken for which compensation is paid, will not support a judgment for consequential damages to the remaining land.

"The fact that a property owner or those desiring to enter his property may have to travel a circuitous and longer route to reach certain points because of traffic regulations changing the direction of traffic does not give rise to an injury different in kind from that sustained by the general public, and affords no basis for an action for damages.

"Incidental damages sustained by an owner of real property because a street was changed from a two-way street to a one-way street adjacent to condemnee's property are the result of the exercise of the police power, and are not ordinarily compensable in eminent domain proceedings."

It is obvious the trial court's rulings with respect to the admission of the evidence were in accordance with these holdings of this court and were not erroneous.

The plaintiff's complaints with respect to the three mentioned instructions given by the court to the jury relate to the issues as stated therein and not to the precise wording thereof. The instructions are long and will not be set forth but we will confine the opinion to the objections raised.

Plaintiff contends the trial court erred in stating in these instructions that the State had a right and duty to control traffic on the highway to promote safety and an abutting landowner is not entitled to compensation for the resulting inconvenience. This objection raises the same question as the plaintiff urged with respect to the exclusion of the proffered evidence. Painter v. State, *supra,* decided these questions adversely to the contentions of the plaintiff. There was no error on this phase of the instructions.

Plaintiff also urges that the court erred by instructing in substance that certain evidence had been received concerning "islands" or "medians" and that it was not admitted as an independent item of damage but solely for the purpose of assisting the jury in determining whether the plaintiff was denied reasonable ingress and egress to and from its property, and that an owner was not entitled as against the public to access at all points on the highway's boundary although entire access could not be cut off. The jury was instructed that if it found on consideration of the evidence that the proposed access at the location was reasonable under all the circumstances shown, the plaintiff was not entitled to damages. If it found the means of ingress and egress had been substantially interfered with and that it was not reasonable under all the circumstances, plaintiff would be entitled to damages it had sustained from loss of access, to be considered with other items of consequential damages therein mentioned, all of which consequential damages including loss of access were to be considered, not as independent items of damage, but as proper factors under all the circumstances in determining the value of the

remaining land. The term consequential damages was defined and explained in other instructions as to which no objections are made.

The plaintiff urges that there is an inconsistency in the court's exclusion of evidence relating to westbound trucks being unable to turn left from the north side of the median to enter the premises and its instructions which stated that the existence of the islands or median might be considered with respect as to whether reasonable ingress and egress to the property had been denied. An examination of the evidence, however, shows the trial court admitted evidence tending to show the drivers of the longer trucks had difficulty in executing a right-hand turn when eastbound because of the proximity of the median to the curb on the south. This instruction appears to have been given to explain the purpose of this evidence.

Plaintiff contends further it was an error to submit to the jury as a question of fact to be determined as to whether or not the proposed ingress and egress to the highway was reasonable, or to instruct that if it found the proposed access was reasonable the plaintiff was not entitled to damages therefor. Plaintiff urges that as a matter of law it was entitled to access to the highway along the entire border of its property, or at least to the full 140-foot entrance that it used before condemnation.

In the recent condemnation case of Balog v. State, 177 Neb. 826, 131 N. W. 2d 402, this court in its syllabi set out these rules: "The right of an owner of property abutting on a street or highway to ingress and egress to and from his premises by way of the street is a property right in the nature of an easement in the street which he cannot be deprived of without due process of law and compensation for his loss.

"The measure of the right of the owner of property abutting on a street to access to and from it by way of the street is reasonable ingress and egress under all the circumstances.

"The right of a landowner or lessee to just compensa-

tion for property taken or damaged for public use is guaranteed by the Constitution. Art. I, § 21, Constitution of Nebraska.

"An abutting property owner is entitled to recover the damages resulting from the destruction or material impairment by the State of his right of access to an existing highway.

"Whether the right of access to an existing highway has been destroyed or materially impaired is a question of fact which must be determined upon the particular facts in each case."

We find the foregoing instructions of the trial court on the question of damages with respect to any loss of access from the plaintiff's premises to the highway are in accordance with these rules and there was no error in their being given.

The plaintiff's last assignment of error is that the verdict is clearly inadequate. Testimony of witnesses for the plaintiff valued the land actually taken at $7,000 and $6,000, respectively, and the difference in value of the remainder before and after the taking as stated by them varied from $28,000 to $21,000. One witness for the defendant valued the land actually taken at $1,500 and the difference in value to the remainder $30. Another stated the value of the land taken was $1,050, and the difference in value $450. The jury viewed the premises and its verdict was well within the limits testified to by the witnesses of the parties both as to the land actually taken and the consequential damages to the remainder. Neither are the special findings inconsistent with the general verdict. In a condemnation action, when the evidence is conflicting, the verdict of a jury will not be set aside unless it is clearly wrong. State v. Dillon, 175 Neb. 444, 122 N. W. 2d 223.

The errors assigned by the plaintiff are without merit and the judgment of the trial court should be and is affirmed.

AFFIRMED.