REQUESTED BY: M. Berri Balka, State Tax Commissioner, Secretary, State Board of Equalization and Assessment
As Secretary of the State Board of Equalization and Assessment ["State Board" or "Board"], you have requested our opinion on several questions relating to the effect of the amendment to Neb. Const. art. IV, § 28, recently adopted by the voters of Nebraska. The amendment, proposed and passed by the Legislature on June 1, 1995, as LR 3CA, was presented to the electorate at the May, 1996, primary election, with the following ballot language:
 A constitutional amendment to establish and provide powers and duties for the Tax Equalization and Review Commission, to eliminate the equalization powers of the Tax Commissioner, Governor, Secretary of State, State Auditor, and State Treasurer, and provide for appointment of a Tax Commissioner and provide for powers and duties.
For
Against.
On June 25, 1996, the Governor, after certification of the results of the primary election held on May 14, 1996, by the Board of State Canvassers, issued a proclamation declaring that the amendment had received the votes required to become part of the Nebraska Constitution. The amendment to art. IV, § 8, provides, in pertinent part:
 By January 1, 1997, there shall be a Tax Equalization and Review Commission. The members of the Commission shall be appointed by the Governor as provided by law. The commission shall have power to review and equalize assessments of property for taxation within the state and shall have such other powers and perform such other duties as the Legislature may provide. The terms of office and compensation shall be as provided by law.
In view of the adoption of LR 3CA, you seek our opinion on several questions which have arisen regarding "the effect of the constitutional amendment on the remaining process for equalization for tax year 1996. . . ." As you note in your letter, Neb. Rev. Stat. § 77-1504.01 (Supp. 1995) provides a procedure whereby county boards of equalization may, on or before August 4, petition the State Board "to consider an adjustment to a class or subclass of real property within the county." The statute further requires that the State Board "shall hear and take action on a petition filed by a county board of equalization on or before August 15." Neb. Rev. Stat. § 77-1504.01. In light of the adoption of the amendment to Neb. Const. art. IV, § 28, which was presented to the voters as an amendment to "eliminate the equalization powers of the Tax Commissioner, Governor, Secretary of State, State Auditor and State Treasurer" (i.e., the State Board)[1], you have asked us to address the following questions:
 1. of the date of the proclamation by the Governor, signed on June 25, 1996, after certification of the election results by the State Canvassing Board, is the constitutional amendment effective?
 2. If the amendment is effective, does the amendment divest the State Board of the constitutional power to review and equalize assessments of property for taxation within the state, or is implementing legislation necessary to pass these responsibilities to the [Tax Equalization and Review Commission] TERC?
 3. Does the language of the amendment which states that "[b]y January 1, 1997, there shall be a Tax Equalization and Review Commission", delay the implementation of the constitutional amendment, so that the State Board continues to act as set out by current statute until the legislature adopts appropriate enabling legislation or until January 1, 1997?
[1] These officers comprise the "State Board of Equalization and Assessment". Neb. Rev. Stat. § 77-501 (1990).
For the reasons set forth below, we conclude that the amendment became effective on certification by the Board of State Canvassers and issuance of the Governor's proclamation. We further conclude that the amendment, by its terms, is self-executing with regard to its grant to the TERC of power to review and equalize assessments of property in the state, and therefore does not require enabling legislation to allow the TERC to presently perform its constitutional function. We therefore also conclude that the amendment divests the members of the State Board of the power which they previously possessed to perform "statewide equalization".
I. Is the Constitutional Amendment Effective?
Initially, you ask whether the constitutional amendment (LR 3CA), became effective "[a]s of the date of the proclamation by the Governor, signed on June 25, 1996, after certification of the election results by the State Canvassing Board, . . . ."
Under well-established Nebraska law, the amendment became effective upon issuance of the Governor's proclamation. Neb. Const. art. III, § 4; Swanson v. State, 132 Neb. 82,89, 271 N.W. 264, 269 (1937) (constitutional amendment becomes "effective on the date and as proclaimed by the governor."); Neb. Rev. Stat. § 49-205 (1993) (providing that, if sufficient votes are cast in favor of constitutional amendment proposed by the Legislature, "the Governor, within ten days after the result is ascertained, shall make proclamation declaring the proposed amendment . . . to be a part of the Constitution of the state."); see Op. Att'y Gen. No. 94099 (Dec. 13, 1994), at 3 (discussing effective date of amendments to State Constitution by initiative). As the amendment to art. IV, § 28, by adoption of LR 3CA, is effective, it is necessary to address your further questions regarding the impact of the amendment on the equalization process for 1996.
II. Does Enactment of the Constitutional Amendment Divest the State Board of Statewide Equalization Power, or is Implementing Legislation Necessary to Grant Such Power to the TERC?
Having concluded that the amendment to art. IV, § 28, is effective, it is necessary to determine whether the amendment divests the State Board of authority to review and equalize assessments of property for taxation within the state, or whether "implementing legislation" is required to give such authority to the TERC.
Consideration of this question requires a determination of whether the language of the amendment, providing that the TERC "shall have power to review and equalize assessments of property for taxation within the state", is self-executing. If so, then the TERC presently possesses such power. If not, then the State Board may still exercise statewide equalization power.
The general rule regarding the self-executing nature of constitutional provisions is stated in 16 C.J.S.Constitutional Law § 46 (1984) as follows:
 Generally, a provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated in order to render it operative; otherwise stated, constitutional provisions are self-executing if they supply a sufficient rule for their implementation, of when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of the right given, or the enforcement of a duty imposed. (footnotes omitted).
On several occasions, the Nebraska Supreme Court has considered whether various state constitutional provisions were self-executing in nature. By way of example, the Court has determined that the following constitutional provisions were self-executing, and thus required no enabling legislation: Neb. Const. art. I, § 21 (just compensation for private property taken or damaged for public use) see Kula v.Prosiski, 219 Neb. 626, 365 N.W.2d 441 (1985); Neb. Const. art. I, § 13 (access to Nebraska courts ) see Sullivanv. Storz, 156 Neb. 177, 55 N.W.2d 499 (1952); Neb. Const. art. 4, § 20 (power of Public Service Commission [formerly State Railway Commission] to regulate common carriers) seeApplication of Neuswanger, 170 Neb. 670, 104 N.W.2d 235
(1960); State ex rel. State Railway Comm'n v. Ramsey,151 Neb. 333, 37 N.W.2d 502 (1949); art. IV, § 28 (providing for appointment of state tax commissioner and defining jurisdiction) State v. Odd Fellows Ass'n, 123 Neb. 440,243 N.W. 616 (1932).[2] In contrast, provisions found not to be self-executing include the following: art. XV, §§ 4-6 (provisions of state constitution relating to water rights) In re Applications A-16027, et al., 242 Neb. 315,495 N.W.2d 23 (1993); art. VIII, § 2 (providing tax exemption for property owned and used exclusively for educational, religious, charitable or cemetery purposes")Indian Hills Community Church v. County Bd. of Equal.,226 Neb. 510, 412 N.W.2d 459 (1987); and art. V, § 22 (Legislature shall provide when state "may sue and be sued")Patteson v. Johnson, 219 Neb. 852, 367 N.W.2d 123
(1985).
The Nebraska Supreme Court discussed at length the standards to be employed in determining whether a constitutional provision is self-executing in its decision in In re ApplicationsA-16027, et al., 242 Neb. 315, 495 N.W.2d 23 (1993). The Court quoted the following language from its prior decision inState ex rel. Walker v. Board of Commissioners,141 Neb. 172, 179, 3 N.W.2d 196, 200 (1942):
 `Constitutional provisions are not self-executing if they merely indicate a line of policy or principles, without supplying the means by which such policy or principles are to be carried into effect, or if the language of the Constitution is directed to the legislature, or it appears from the language used and the circumstances of its adoption that subsequent legislation is contemplated to carry it into effect.'
242 Neb. at 328-29, 495 N.W.2d at 31-32.
Interpreting the test set forth in its prior decision inState ex rel. Walker v. Board of Commissioners, the Court stated the following:
 This standard requires that three distinct inquires be made . . .: (1) whether the constitutional provision merely indicate[s] a line of policy to be followed, without a corresponding means of implementation; (2) whether the language is directed to the Legislature, giving it the power to enact means of implementation; or (3) whether it appears from the language of the section[ ] or the circumstances of [its] adoption that subsequent legislation was contemplated to provide the means of implementation.
242 Neb. at 329, 495 N.W.2d at 32.
The Court further opined that, "if any of these tests are satisfied, the constitutional provision[ ] in question [is] not self-executing." Id. at 329, 495 N.W.2d at 32.
Applying the standard employed by the Nebraska Supreme Court in the In re Applications A-16027, et al. case, it appears that the constitutional amendment granting the TERC power to review and equalize assessments of property statewide is self-executing. First, the language of the amendment, providing that the TERC "shall have power to review and equalize assessments of property in the state . . .", is not merely an expression of policy; rather, it is an affirmative grant of constitutional authority to the TERC to exercise statewide equalization power.[3]
Second, the language of the amendment does not direct the Legislature to enact legislation to enable TERC to implement its constitutional power to perform statewide equalization. The amendment provides that the TERC "shall have power to review and equalize assessments of property for taxation within the stateand shall have such other powers and perform such otherduties as the Legislature may provide." (emphasis added). Thus, while the amendment contemplates that legislative action is necessary to grant "other" powers and duties to the TERC, no legislative action is necessary to implement the constitutional power granted to TERC to "review and equalize assessments of property for taxation within the state. . . ."
Third, the language of the amendment does not clearly evince an intent to require implementing legislation for the TERC to exercise the constitutional power granted to perform statewide equalization. In this regard, it must be noted that the amendment does provide that, "[by] January 1, 1997, there shall be a Tax Equalization and Review Commission." The TERC was established by legislation enacted in 1995 which contained an effective date of January 1, 1996. 1995 Nebraska Laws, LB 490, §§ 1-21, codified at Neb. Rev. Stat. §§ 77-5001
to -5021 (Supp. 1995). The three members of the Commission (as provided for under § 77-5003), were appointed by the Governor in January, 1996, and confirmed by the Legislature on February 20, 1996.
Thus, the TERC has, in fact, been created, and is presently in existence. While certain statutory powers were granted to the TERC prior to adoption of the constitutional amendment, this does not preclude the TERC from assuming the constitutional power granted by the amendment to review and equalize assessments of property. The language providing that the TERC shall exist "[b]y January 1, 1997", is a directive that the Legislature create the TERC. That requirement has been satisfied, as TERC was created by the Legislature's enactment of LB 490. Indeed, if the amendment is not construed to be self-executing, and therefore to require legislative action to implement the constitutional authority of the TERC to review and equalize assessments, the Legislature could not, absent the conduct of a special session, comply with the constitutional mandate that the TERC exist for this purpose "[b]y January 1, 1997", as the Legislature's next regular session does not commence until after that date. We decline to adopt a construction of the amendment which could place the Legislature in violation of a constitutional mandate.
As we believe that the portion of the amendment granting constitutional authority to the TERC to review and equalize assessments of property in the state is self-executing, the effect of the amendment is to divest the State Board of all jurisdiction to exercise statewide equalization powers. As stated in 16 C.J.S. Constitutional Law § 41 (1984):
 A constitutional provision may nullify or amend a statute in so far as future operation is concerned, and the constitution as the highest and most recent expression of the law-making power, operates to repeal or supersede not only all statutes that are expressly enumerated as repealed, but also all that are inconsistent with the full operation of its provisions. A statute opposed to the plain terms of a subsequently adopted constitutional provision must be regarded as repealed by implication. A constitutional provision which is a revision of the entire subject matter of, and constitutes a substitute for, a statute will supersede such statute. (footnotes omitted).
The amendment, which eliminates the constitutional authority of the members of the State Board to perform statewide equalization, necessarily operates to supersede or repeal by implication all inconsistent statutes. Thus, all statutes pertaining to the State Board's exercise of duties related to statewide equalization, including the county petition process provided under § 77-1504.01, are inconsistent with the constitutional authority now vested in the TERC, and are repealed by implication.[4]
In sum, we conclude that the TERC is the body presently authorized by the Nebraska Constitution to perform statewide equalization. While § 77-1504.01 has been repealed by implication because it is inconsistent with the Constitution as amended, the TERC may, based on its constitutional power to review and equalize assessments by virtue of the amendment, establish a procedure to consider petitions by counties in a manner similar to that contemplated under § 77-1504.01.
III. Is the Effective Date of the Constitutional Amendment Delayed to January 1, 1997, Thus Allowing the State Board to Continue to Exercise Statewide Equalization Powers.
As noted above, we conclude that the constitutional amendment is presently effective, and that the statewide equalization power granted to the TERC under the constitutional amendment is self-executing. The amendment thus operates to divest the State Board of any authority to exercise statewide equalization powers. The "[b]y January 1, 1997" language in the amendment, as noted previously, constitutes a directive to the Legislature that the TERC be established by that date. The TERC, of course, has been created by the Legislature, and is presently in operation. And, based on our analysis of the criteria to be applied in determining if the amendment is self-executing, we have concluded that the provision of the amendment granting the TERC power to review and equalize assessments of property in the state is self-executing, and that the TERC may exercise this constitutional power without the enactment of enabling legislation.[5] Thus, the State Board has no authority to exercise statewide equalization powers.
Sincerely,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
Approved:
Don Stenberg
Attorney General
[2] This interpretation of the Tax Commissioner's powers under art. IV, § 28, of course, predates the recent amendment of this provision, which altered the constitutional language to provide that "[t]he Tax Commissioner may have jurisdiction over the administration of the revenue laws of the state and such other powers and duties as the Legislature may provide." (emphasis added).
[3] Indeed, it is worth noting that the Nebraska Supreme Court, construing the language of art. IV, § 28, prior to adoption of LR 3CA, stated that, "[i]n statewide equalization, the board [State Board] exercise[d] constitutional power instead of authority delegated by the Legislature." County of Otoe v.State Bd. of Equal., 182 Neb. 621, 624, 156 N.W.2d 728, 731
(1968). Under art. IV, § 28, as amended, the pertinent language granting the TERC "power to review and equalize assessments of property for taxation within the state", eliminates reference to the members of the State Board exercising such power. In view of the identical language involved, save for the substitution of the TERC for the members of the Board, it is certainly reasonable to conclude that the TERC was intended to assume the constitutional power previously granted to the State Board.
[4] We point out that only those statutes which relate to the State Board's exercise of statewide equalization power are repealed by virtue of the enactment of the constitutional amendment. The State Board continues to exist as a statutory body (Neb. Rev. Stat. §§ 77-501 and 77-502 (1990)), and may perform duties imposed by statute not related to statewide equalization. See, e.g., Neb. Rev. Stat. §66-4,144 (Supp. 1995) (setting forth State Board's duties in setting the variable motor fuel tax rate); see also Swansonv. State, 132 Neb. 82, 271 N.W. 264 (1937) (constitutional amendment abolished commissioner of public lands and buildings as a constitutional office, but office still remained as established by statute.).
[5] This, of course, does not mean that the Legislature may not enact legislation which supplements or facilitates the TERC's exercise of its constitutional power to equalize assessments of property in the state, as the Legislature did previously with regard to the exercise of the State Board's exercise of its statewide equalization power. See 16 C.J.S.Constitutional Law § 46 (1984) ("[S]elf-executing character of a constitutional provision [does not] necessarily preclude legislation for the better protection of the right secured or legislation in furtherance of the purposes, or of the enforcement, of the provision." (footnotes omitted); Stateex rel. Winter v. Swanson, 138 Neb. 597, 294 N.W. 200 (1940) (Constitutional provision securing right of initiative, while self-executing, did not preclude enactment of legislation facilitating initiative process.).